IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | | |
|---|---|---|---|
| ARCH ADAMS, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | CIVIL ACTION | |
| v. | : | No. 3:21-CV-72 (CAR) | |
| | : | | |
| ABEO NORTH AMERICA, INC., | : | | |
| | : | | |
| Defendant. | : | | |
| | : | | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Currently before the Court is Defendant ABEO North America, Inc.'s ("ABEO")

Motion to Dismiss Plaintiff Arch Adams's ("Adams") Amended Complaint for lack of

subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the

reasons explained below, the Court finds ABEO's principal place of business is in

France. Thus, the Court has diversity jurisdiction, and ABEO's Motion [Doc. 10] is

**DENIED**.

## BACKGROUND

Adams filed this action seeking a declaratory judgment to determine the parties'

rights and obligations under the Purchase and Sale Agreement and damages for breach

of contract.[1] Adams asserts the Court has diversity jurisdiction over the case, as he is a

---

[1] Plaintiff's Amended Complaint, [Doc. 7].

citizen of Georgia, and ABEO is incorporated in Delaware with its principal place of business in France.[2] ABEO contends the parties are not diverse, and the Court must dismiss Adams's complaint for lack of jurisdiction because ABEO's principal place of business is in Hartwell, Georgia.[3]

Following the parties' briefing on ABEO's Motion, the Court granted Adams's request for a period of limited jurisdictional discovery to help determine ABEO's principal place of business.[4] ABEO's Motion is now ripe for ruling.

## LEGAL STANDARD

### A.  Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and by statute.[5] "It is to be presumed that a cause lies outside [of the federal courts'] limited jurisdiction, and the burden rests upon the party asserting jurisdiction" to establish its existence by a preponderance of the evidence.[6] Adams filed this case pursuant to the Court's diversity jurisdiction. Diversity jurisdiction is determined at the time a complaint is filed.[7] Federal courts have diversity jurisdiction over civil actions between citizens of different states or between citizens of a state and

---

[2] Plaintiff's Amended Complaint, [Doc. 7].

[3] Defendant's Motion to Dismiss, [Doc. 10].

[4] *See* Order on Plaintiff's Request for Jurisdictional Discovery, [Doc. 14].

[5] *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[6] *Kokkonen*, 511 U.S. 375, 377 (1994); *King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

[7] *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017).

citizens or subjects of a foreign state where the amount in controversy exceeds $75,000.[8] Diversity jurisdiction "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant."[9]

Under Federal Rule of Civil Procedure 12(b)(1), a party may challenge subject matter jurisdiction on either facial or factual grounds.[10] A facial attack "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purpose of the motion."[11] A factual attack "challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."[12]

Here, ABEO raises a factual attack on the Court's subject matter jurisdiction. Because the Court's authority to hear the case is at issue, the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."[13] Thus, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of

---

[8] 28 U.S.C. § 1332.

[9] *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir 1998) ("[D]iversity jurisdiction requires complete diversity, meaning that every plaintiff must be diverse from every defendant."); *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998) ("The presence of [a] nondiverse party automatically destroys original jurisdiction.").

[10] *Carmichael v. Kellogg, Brown & Root Svcs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citations omitted).

[11] *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotation omitted).

[12] *Id.*

[13] *Id.*

disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."[14]

B. *Hertz* Analysis

For purposes of diversity jurisdiction, a corporation is a citizen of the state in which it is incorporated and the state where it has its principal place of business.[15] In *Hertz v. Friend*, the Supreme Court adopted the "nerve center" test to determine the location of a corporation's principal place of business.[16] The Court held that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."[17] In practice, this "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings."[18] If "the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat" courts should analyze "the place of actual direction, control, and coordination, in the absence of such manipulation."[19] While "a corporation's general business activities more often lack a single principal place where

---

[14] *Id.*
[15] 28 U.S.C. § 1332(c).
[16] *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010).
[17] *Id.* at 93.
[18] *Id.*
[19] *Id.* at 97.

they take place," ultimately, the nerve center points "in a single direction, toward the center of overall direction, control, and coordination."[20]

ABEO argues that its records, bank account, limited business activities, and "nerve center" are located in Hartwell, Georgia and thus, the parties are not diverse. In response, Adams contends ABEO's "nerve center" is in Rioz, France, where its officers direct and control the company.

## FACTUAL FINDINGS

The record before the Court establishes the following facts. Adams is a citizen of Georgia, and previously owned Fun Spot Manufacturing, LLC—a company which manufactured trampolines and other "fun park" equipment.[21] ABEO North America ("ABEO"), a wholly owned subsidiary of its France-based parent company ABEO SA ("ABEO France"), purchased Fun Spot Manufacturing from Adams in October of 2018 pursuant to the Purchase and Sale Agreement ("PSA") filed with the Court.[22]

ABEO is a holding company, incorporated in Delaware, formed for the purpose of acquiring Fun Spot Manufacturing—ABEO's sole asset.[23] Fun Spot Manufacturing is headquartered and operates in Hartwell, Georgia.[24] ABEO does not own or lease any real estate, and its mailing address is Fun Spot Manufacturing's office at 1321 E. Franklin

---

[20] *Id*. at 95-96.

[21] Plaintiff's Amended Complaint, [Doc. 7].

[22] Purchase and Sale Agreement, [Doc. 24]; Protective Order, [Doc. 19].

[23] Witness Declaration of Olivier Esteves, [Doc 22-1] at ¶ 2, 5.

[24] *Id*. at ¶ 5.

Street, Hartwell, GA 30643.[25] ABEO pays federal and state income tax in Georgia; the address on ABEO's tax returns is in Hartwell, Georgia.[26]  ABEO's sole bank account is in Hartwell, Georgia.[27] ABEO's primary recurring business transaction is the repayment of a loan to ABEO France.[28] ABEO's business records, bank statements, tax returns, and documents related to the loan transaction are maintained in Hartwell, Georgia.[29] ABEO has never held an annual meeting or a meeting of the board of directors.[30] Since its incorporation, ABEO has had three officers: Oliver Estèves, Jean Ferrier, and Jacques Janssen. The reported duties of all three officers are identical.[31]

Oliver Estèves is the President, CEO, and sole director of ABEO, and he resides in Besançon, France.[32] Estèves's duties include, "[c]reation of ABEO for purposes of acquiring Fun Spot Manufacturing, LLC; Acquisition of Fun Spot Manufacturing, LLC; Initial capital infusion to ABEO; Appointment of ABEO agents Bill Wild and Randy Bannister."[33] Estèves, "subject to the conditions and limitations set forth in ABEO's bylaws, has ultimate decision-making authority for exceptional business decisions, such as, for example, [[t]he acquisition of another entity by Defendant] and [Defendant's

---

[25] *Id*. at ¶ 6, 8.

[26] *Id*. at ¶ 9.

[27] *Id*. at ¶ 10; Plaintiff's Supplemental Memorandum, Exhibit C, [Doc. 23-2] at p. 1

[28] Witness Declaration of Olivier Esteves at ¶ 12.

[29] *Id*. at ¶ 14.

[30] Plaintiff's Supplemental Memorandum, Exhibit C, [Doc. 23-3] at p. 1-3.

[31] Defendant's Objections and Responses to Plaintiff's First Interrogatories, [Docs. 22-2 and 23-1] at ¶ 1.

[32] Witness Declaration of Olivier Esteves at ¶ 3-4, 16.; Defendant's Objections and Responses to Plaintiff's First Interrogatories, [Docs. 22-2 and 23-1] at ¶ 1.

[33] Defendant's Objections and Responses to Plaintiff's First Interrogatories, [Docs. 22-2 and 23-1] at ¶ 1.

merger with any other entity].”[34] Each year since ABEO's formation in 2018, Estèves executed a "Joint Resolution" waving the requirement of an annual meeting of stockholders and the board of directors.[35] In addition to his duties as CEO, President, and sole director of ABEO, Estèves also serves as CEO of ABEO's parent company, ABEO France.[36]

ABEO's bylaws explicitly define the roles and responsibilities of its president:

The president shall be in charge of the day-to-day operations and affairs of the Corporation subject to the policies and the directions of the board of directors. In the absence of a chairman, the president shall preside at all meeting of the stockholders and of the board of directors. The President may sign, with the secretary or other proper officer of the Corporation thereunto authorized by the board of directors, share certificates, deeds, mortgages, bonds, contracts, or other instruments which the board of directors has authorized to be executed. The President shall have the power to appoint such agents and employees as in his or her judgment may be necessary or proper for the transaction of the business of the Corporation, and in general shall perform all duties incident to the office of president and such other duties as may be prescribed by the board of directors.[37]

Jean Ferrier is the Secretary and Treasurer of ABEO and resides in Lyon, France.[38] Ferrier and other employees of ABEO France, acting on Ferrier's behalf, instructed agents Bill Wild, Randy Bannister, and Rhonda Davis to open a bank account for ABEO, advised the agents on how to do so, answered questions about various financial matters, and

---

[34] *Id*. at ¶ 12.
[35] Plaintiff's Supplemental Memorandum, Exhibit C, [Doc. 23-3] at p. 1-3.
[36] Witness Declaration of Olivier Esteves, [Doc 22-1] at ¶ 16.
[37] Plaintiff's Supplemental Memorandum, Exhibit C, [Doc. 23-3] at p. 24.
[38] Defendant's Objections and Responses to Plaintiff's First Interrogatories, [Docs. 22-2 and 23-1] at ¶ 1.

monitored the agents' progress.[39] ABEO's bylaws also explicitly define the roles and responsibilities of its treasurer:

> The treasurer shall be the principal accounting and financial officer of the Corporation. He or she shall: have charge of and be responsible for the maintenance of adequate books of account for the Corporation; have charge and custody of all funds and securities of the Corporation, and be responsible therefor and for the receipt and disbursement thereof; and perform all the duties incident to the office of treasurer and such other duties as from time to time may be assigned to him by a member of the president or by the board of directors.[40]

Additionally, the PSA requires all notices to be sent to Ferrier's address in Rioz France, and to his ABEO France email address.[41]

Jacques Janssen is the former Vice President of ABEO and resides in Helmond, Netherlands.[42] Janssen executed the PSA to purchase Fun Spot Manufacturing on behalf of the buyers—ABEO North America, Inc. and ABEO Real Estate North America, Inc.[43]

ABEO's bylaws state that: "[t]he business affairs of the Corporation shall be managed by its board of directors."[44] But, in addition to its sole director and three officers, ABEO lists two agents—Bill Wild and Randy Bannister—in its response to Adams's interrogatories as "hav[ing] ever directed, controlled, or coordinated [ABEO's]

---

[39] Plaintiff's Supplemental Memorandum, Exhibit C, [Doc. 23-3] at p. 73-75.

[40] *Id.* at p. 24.

[41] Purchase and Sale Agreement, [Doc. 24] at Section 8.02.

[42] Defendant's Objections and Responses to Plaintiff's First Interrogatories, [Docs. 22-2 and 23-1] at ¶ 1.

[43] *Id.* at ¶ 10; Purchase and Sale Agreement, [Doc. 24].

[44] Plaintiff's Supplemental Memorandum, Exhibit C, [Doc. 23-3] at p. 23.

activities."[45] Wild and Bannister were appointed orally in 2018, and their reported

business activities as agents of ABEO include, "ABEO's recurring business activity,

including repayment of loan to ABEO SA, paying state taxes in Georgia, and paying

federal taxes."[46] In addition to the activities preformed for ABEO, Wild serves as CEO for

Fun Spot Manufacturing, and Bannister serves as COO of Fun Spot Manufacturing.[47]

## DISCUSSION

The Supreme Court in *Hertz* held "'principal place of business' is best read as

referring to the place where a corporation's officers direct, control, and coordinate the

corporation's activities."[48] The Eleventh Circuit has not addressed the principal place of

business of a holding company post-*Hertz*. Other courts which have considered this issue

post-*Hertz* have found a holding company's nerve center is where officers set policy and

oversee significant corporate decisions—not where day-to-day operations take place.[49] In

---

[45] Defendant's Objections and Responses to Plaintiff's Second Interrogatories to Defendant, [Doc. 23-3] at ¶ 9, 10.

[46] Defendant's Objections and Responses to Plaintiff's First Interrogatories at ¶ 1, 8. *See also* Plaintiff's Supplemental Memorandum, Exhibit C, [Doc. 23-3] at p. 52. (On March 12, 2019, Estèves authorized Banister and Wild to act as authorized signatories of ABEO's bank account).

[47] Defendant's Objections and Responses to Plaintiff's First Interrogatories at ¶ 1, 8.

[48] *Hertz*, 559 U.S. 77, 93 (2010).

[49] *Cent. W. Va. Energy Co. v. Mountain State Carbon*, LLC, 636 F.3d 101, 105 (4th Cir. 2011). *See also Johnson v. Smithkline Beecham Corp.*, 724 F.3d 337 (3d Cir. 2013); *3123 SMB LLC v. Horn*, 880 F.3d 461 (9th Cir. 2018); *Lewis v. Lycoming*, No. 11–6475, No. 11-6475, 2012 U.S. Dist. LEXIS 88905, at *16-17 (E.D.Pa. June 27, 2012) ("Although [the company's] public face is in Pennsylvania, the record reflects that the top officers of Avco are situated in Wilmington, Massachusetts. All major decisions involving the business are made or approved there."); *Freedom Envtl. Servs., Inc. v. Borish*, No. 12–665, 2012 U.S. Dist. LEXIS 89572 (M.D.Fla. June 20, 2012) (considering the location of a holding company's board meetings and officers in assessing its citizenship); *Balachander v. AET Inc.*, No. 10–4805, 2011 U.S. Dist. LEXIS 109787, at *1 (S.D.Tex. Sept. 27, 2011) (relying on the location in which the company's officers make management decisions); *Ortiz v. Chesapeake Operating, Inc.*, No. 11–0055, 2011 U.S. Dist. LEXIS 90069, at *4-5 (W.D.La. Aug 9, 2011) (looking

*Mountain State Carbon*, the Fourth Circuit rejected the appellee's argument that "under *Hertz*, a corporation's principal place of business is 'where it directs its daily management activities,'" and noted "neither the word 'daily' nor the word 'management' appears anywhere in *Hertz*."[50] Three years later, in *Hoschar*, the Fourth Circuit reiterated that a subset of West Virginia based officers' "day-to-day operations and public interface" responsibilities were insufficient to establish the company's nerve center.[51]

At the time Adams filed this lawsuit, both of ABEO's officers resided in France. None of ABEO's officers or its sole director has ever lived in or directed business activities from Georgia. From its inception, Estèves and Ferrier directed, controlled, and coordinated ABEO's activities from France. Estèves, as CEO of ABEO France, created ABEO for the purpose of acquiring Fun Spot Manufacturing. The PSA requires all notices to be sent to ABEO CFO Ferrier's address in Roiz, France and his ABEO France email address. There is no logical reason ABEO would require "all notices, requests, consents, claims, demands, waivers, and other communications"[52] related to the PSA to be sent

---

to where the holding company's directors make "overall policy decisions," not to where its subsidiaries manage their day-to-day activities); *Astra Oil Trading N.V. v. Petrobras Am. Inc.*, No. 09–1274, 2010 U.S. Dist. LEXIS 78573, at *7-10 (S.D.Tex. Aug. 4, 2010) (declining to use the location of the board of directors, but only because the company's sole officer had "significant independent authority as CEO … to direct, control, and coordinate [the company's] activities").

[50] *Id.* at 106. (concluding if a corporation's day-to-day operations are managed in one state, while its officers make significant corporate decisions and set policy in another, the principal place of business is the latter).

[51] *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 172 (4th Cir. 2014) (finding the company's nerve center was in Ohio where the majority of officers responsible for directing, controlling, and coordinating the company's activities were located).

[52] Purchase and Sale Agreement, [Doc. 24-1] at p. 38-39.

anywhere except its nerve center—where its President, CEO, CFO, and sole director reside, direct, control, and coordinate ABEO's business activities.

Furthermore, ABEO's own bylaws, created and adopted at the direction of Estèves, support the Court's finding that ABEO's never center is located in France. The bylaws undoubtedly contemplate the positions and officers with "ultimate control" of ABEO's business activities. Under ABEO's bylaws, "[t]he business affairs of the Corporation shall be managed by its board of directors [Estèves—the sole director]."[53] Ultimate control of ABEO's day-to-day operations and affairs rests with Estèves as President, CEO, and sole director. Estèves has the ultimate authority to appoint agents and to take binding contractual action.[54] Likewise, ultimate control of ABEO's finances and custody of funds and securities—including the payments made from ABEO to ABEO France—rest with Ferrier. [55]

Estèves's power to appoint agents as "necessary or proper for the transaction of the business of the Corporation" is instructive to the Court's analysis. Nothing within ABEO's bylaws provides Estèves, or any officer, the authority to delegate duties explicitly designated for their position—let alone to delegate the immense authority to "direct,

---

[53] Plaintiff's Supplemental Memorandum, Exhibit C, [Doc. 23-3] at p. 23.

[54] *Id*. at 24 (As President, Estèves "shall be in charge of the day-to-day operations and affairs of the Corporation subject to the policies and the directions of the board of directors [and] shall have the power to appoint such agents and employees as in [his] judgment may be necessary or proper for the transaction of the business of the Corporation.").

[55] *Id*. (As Treasurer, Ferrier "shall be the principal accounting and financial officer of the Corporation," and shall be responsible for ABEO's financial books, funds, securities, and for the receipt and disbursement thereof.).

control, and coordinate" ABEO's business activities to agents. But, the routine authorization of payments and paying corporate taxes are likely the very day-to-day support functions of an agent contemplated in the bylaws.

As in *Hoschar*, Wild and Bannister are merely responsible for managing day-to-day operations and implementing directives from ABEO's officers and sole director in France.[56] These responsibilities lack meaningful discretion, authority, independence, and control to establish ABEO's nerve center.[57]

ABEO's argument that Wild and Bannister, as agents of ABEO, "direct, control, and coordinate" its business activities from Georgia is both unpersuasive and unsupported by the record. ABEO points to Wild and Bannister's duties to repay the loan to ABEO France, pay state taxes in Georgia, and pay federal taxes in support of Hartwell, Georgia as its nerve center.[58] But, ABEO fails to cite any case law supporting the activity of a holding company's agents—not officers—is dispositive or relevant to the nerve center test established in *Hertz*. Additionally, ABEO's reliance on day-to-day activities

---

[56] *See* Plaintiff's Supplemental Memorandum, Exhibit C, [Doc. 23-3] at p. 73-75 (Ferrier and employees of ABEO France, acting on Ferrier's behalf, instructed agents Wild, Bannister, and Rhonda Davis to open a bank account for ABEO, advised the agents on how to do so, answered questions about various financial matters, and monitored the agents' progress).

[57] ABEO's argument that the Eleventh Circuit's holding in *Annon Consulting, Inc. v. Bionitrogen Holdings Corp.*, 650 F. App'x 729 (11th Cir. 2016) says otherwise is without merit. In *Annon Consulting*, a default judgment case, "[n]othing in the record evidence[d] that Annon's corporate activities were directed, controlled, or coordinated from a location other than from Ontario, Canada." That is simply not the case here, especially considering the parties four-months of jurisdictional discovery. *See* [Doc. 12] at 3.

[58] Defendant's Objections and Responses to Plaintiff's First Interrogatories at ¶ 1, 8. *See also* Plaintiff's Supplemental Memorandum, Exhibit C, [Doc. 23-3] at p. 52.

and the location of ABEO's tax filings, corporate records, accountant, bank account, and self-identified headquarters, to establish Hartwell as ABEO's nerve center is misplaced and equally unpersuasive.[59]

ABEO attempts to distinguish the present case from *Mountain State Carbon* and *Hoschar* by citing to *Elite Integrated Med., LLC v. New World Communs. of Atlanta, Inc.*, a recent case from the Northern District of Georgia.[60] The present case is distinguishable from *New World* for various reasons. First, ABEO is substantially more passive than the defendant in *New World*.[61] While ABEO's primary recurring business transaction is the repayment of a loan to ABEO France, the defendant in *New World* "operates one station,

---

[59] *See CostCommand, LLC v. WH Adm'rs, Inc.*, 820 F.3d 19, 24-25 (D.C. Cir. 2016) ("'Houston is where [the company] told State authorities, customers, vendors and its landlord it could be found, it was where in-person, strategic meetings were conducted, it was where tax filings were made, where its corporate records are kept, where its primary counsel, accountants and bank account are located, and the place specified as its headquarters in its corporate charter.' Except for the alleged 'in-person, strategic meetings,' the factors composing this list have little to do with 'where the corporation's high level officers direct, control, and coordinate the corporation's activities.' *Hertz*, 559 U.S. at 80. Although some corporate activities occurred in Texas, Turner oversaw and controlled them from Maryland.") (internal citations omitted); *See also Ortiz*, 2011 U.S. Dist. LEXIS 90069, at *4-5 (W.D.La. Aug 9, 2011) ("Plaintiffs […] argue that [the company's] principal place of business is Texas […] because the majority of day-to-day operational decisions occur in Texas, and are merely reported to the executives and directors in Georgia. The Court finds these arguments unpersuasive and in conflict with the test set forth in *Hertz*. The affidavits presented by [the company] clearly demonstrate that the actual direction, control, and coordination of [the company's] corporate-wide activities occur in Georgia. These include overall policy making, decisions regarding financial expenditures, the implementation of an overall business plan, […] and asset management.").

[60] *Elite Integrated Med., LLC v. New World Communs. of Atlanta, Inc.*, No. 1:19-cv-5214-AT, 2021 U.S. Dist. LEXIS 80843, at *14-15 (N.D. Ga. Apr. 28, 2021). (The majority of the holding company's officers—including its CEO—were based in California where it registered its principal place of business. But, following a period of jurisdictional discovery, the district court concluded plaintiffs failed to carry their burden of establishing the defendant's principal place of business was in Los Angeles.

[61] *See generally*, *SmithKline*, 724 F.3d at n. 21, (To determine the actual center of direction, control, and coordination, "we first have to acknowledge the nature of a corporation's activities, as it is difficult to locate a corporation's brain without first identifying its body.").

Fox 5 Atlanta, and broadcasts live from Atlanta 68 hours per week."[62] Second, the Atlanta-based officers in *New World* make all decisions about the on-air and digital news content broadcasted and "'have the authority to make their own policies and procedures' to operate their business."[63]

ABEO's argument that the present case is analogous to *New World* fails. The only "decision" Wild and Bannister appear to make is whether to authorize the loan payments ABEO is legally obligated to make under the PSA.[64] Additionally, it is implausible that officers of the acquired company, Fun Sport Manufacturing, possess the ultimate power to control, direct, or alter decision making on matters such as repayment of the loan to ABEO France.[65]

Without meaningful authority or discretion to direct, control, or coordinate ABEO's business activities, the Court cannot conclude Wild's and Bannister's role as agents establishes ABEO's principal place of business is located in Hartwell, Georgia.[66]

---

[62] *New World*, 2021 U.S. Dist. LEXIS 80843, at *9.

[63] *Id.* at 14-15. ("[A]ll activity attendant with running Fox 5 Atlanta's broadcast station involves decisions made and authorized in Atlanta by the [l]ocal [o]fficers [who] make all decisions about on-air and digital news content.")

[64] Defendant's Objections and Responses to Plaintiff's Second Interrogatories to Defendant, [Doc. 23-3] at ¶ 7.

[65] If Wild or Bannister refused to authorize loan payments, Estèves would undoubtedly remove them as agents of ABEO. *Compare Celli v. Greenwich Ins. Co.*, 478 F. Supp. 3d 93 (D. Mass. 2020) *with New World*, 2021 U.S. Dist. LEXIS 80843, at n. 10 (In *Celli*, "[t]here was nothing in the record to dispute that the corporate officers in Massachusetts exercised ultimate control over the company. [In *New World*], there is significant evidence that a core group of decisionmakers exercise control […] from Atlanta.").

[66] *Balachander*, No. 10–4805, 2011 U.S. Dist. LEXIS 109787, at *1 (S.D.Tex. Sept. 27, 2011) (noting the limited authority of employees in Houston weighed against finding the company's nerve center was in Houston when the company's officers made management decisions from Malaysia).

Like the CEO in *Astra Oil*, Estèves has the ultimate authority as President, CEO, and sole director, to direct, control, and coordinate ABEO's activities.[67] Thus, ABEO's nerve center is in France, and the Court has subject matter jurisdiction over the case.

## CONCLUSION

The Supreme Court recognized in *Hertz* that "there will be hard cases" and "the use of a 'nerve center' test may in some cases produce results that seem to cut against the basic rationale for 28 U.S.C. § 1332."[68] But, the "nerve center" test adopted in *Hertz* is clear and explicitly directs this Court's inquiry to "the place where the corporation's officers direct, control, and coordinate the corporation's activities."[69] Having considered the record, applicable law, and the parties' arguments, Adams has carried his burden of establishing the existence of subject matter jurisdiction by a preponderance of the evidence. ABEO's Motion to Dismiss for Lack of Jurisdiction [Doc. 10] is **DENIED**.

**SO ORDERED**, this 25th day of March, 2022.

s/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[67] *See Astra Oil*, 2010 U.S. Dist. LEXIS 78573, at *8 (S.D.Tex. Aug. 4, 2010).

[68] *Hertz*, 559 U.S. at 96.

[69] *Id*. at 93.

15